# Third District Court of Appeal

## State of Florida

Opinion filed August 14, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D24-0675, 3D24-0754, 3D24-0755, 3D24-0764, 3D24-0765,
3D24-0766, 3D24-0767, 3D24-0770, 3D24-0776, 3D24-0781, 3D24-0786,
3D24-0790
Lower Tribunal Nos. 22-CT-1267-A-K, 22-CF-638-A-K, 23-MM-1933-A-K,
23-CF-430-A-K, 24-CT-32-A-K, 24-MM-404-A-K, 24-MM-897-A-K, 23-
CT-569-A-K, 24-CT-1224-A-K, 23-CF-491-A-K, 23-MM-570-A-K, 24-
MM-583-A-K

_____

**Patrick Laurence, et al.,**
Petitioners,

vs.

**The State of Florida,**
Respondent.

Cases of Original Jurisdiction – Prohibition.

Joyce Law, P.A., and Richard F. Joyce; and Samuel J. Kaufman, for petitioners.

Ashley Moody, Attorney General, and Ivy R. Ginsberg, Assistant Attorney General, for respondent.

Before FERNANDEZ, GORDO and LOBREE, JJ.

FERNANDEZ, J.

The defendant, Patrick Laurence, petitions this Court in case number 3D24-0675 for a Writ of Prohibition seeking to disqualify the trial court, Judge Mark Wilson, from presiding over Laurence's criminal case which is pending in the County Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida. The eleven other defendants whose cases are consolidated with Laurence's case also seek review of their orders denying their motions to disqualify Judge Wilson.[1] For the following reasons, we conclude that the motions were not legally sufficient and thus deny the petitions.

## I.    FACTS

On March 7, 2024, Laurence's counsel became aware after reading an article in the Keys Citizen newspaper that the trial court judge's spouse was employed by the Monroe County State Attorney's Office as the Executive Director of the office since January 1, 2024. The article also reported that this Court had granted a Petition for Writ of Prohibition in Brewer v. State, Case No.: 3D2023-2142, which Laurence and petitioners claim is based on facts that are similar to their cases. The Monroe County State Attorney's

---

[1] 3D24-0754, Christopher Hedburg v. State; 3D24-0755, Arvand Lori Amini v. State; 3D24-0764, Nexor Balladares v. State; 3D24-0765, David Bledsoe v. State; 3D24-0766, James Chappy Brown, Jr. v. State; 3D24-0767, Jason Flynn v. State; 3D24-0770, Pamela Leonard v. State; 3D24-0776, Maxim Barkovsky v. State; 3D24-0781, Daniel Daley Dixon v. State; 3D24-0786, Sherley Joseph v. State; and 3D24-0790, Sherley Joseph v. State.

Office is prosecuting petitioners, and all petitioners are represented by the same counsel.

On September 8, 2023, the trial court wrote to the JEAC requesting an advisory opinion on the issue of what impact, if any, his spouse's employment as Executive Director of the Monroe County State Attorney's Office would have on the trial judge's continued ability to handle criminal cases. The judge attached the job description of the Executive Director, which stated in pertinent part:

GENERAL DESCRIPTION

This position is responsible for the daily operational aspects of the office as assigned by the elected State Attorney. This is a supervisory position over employees who are responsible for such duties as building operations, finance, IT and human resources.

This position can also supervise support personnel within an office. The position greatly influences the policies and procedures of the office. . . .

The JEAC issued its opinion on November 13, 2023. Florida JEAC Opinion 2023-09 stated the following issue, answer, and summarized facts:

ISSUE

May the inquiring judge preside over criminal cases if the judge's spouse works at the state attorney's office in a supervisory capacity over non-attorney staff, but has no supervision over any assistant state attorney.

3

ANSWER: Yes

FACTS

The inquiring judge currently presides over a docket that includes circuit and county criminal cases. The judge's spouse has been asked to serve as the Executive Director in the local state attorney's office. The judge's spouse is a lawyer; however, the position of Executive Director is an administrative post. The inquiring judge is aware of our past opinions that conclude that a judge's spouse serving as a supervisor to any lawyer appearing before the judge would require disqualification. Here, however, the judge advises the Executive Director's job will not involve supervising any lawyers. Instead, the Executive Director is responsible for administrative functions including finance, human resources, information technology, supervising non-attorney staff, etc. Assistant state attorneys are under a separate command and would not be supervised by the judge's spouse. The judge advises the only work-related interaction the Executive Director will have with assistant state attorneys involves processing leave and travel requests, reimbursements, payroll and similar administrative duties. Occasionally, the Executive Director may be asked to sit in on interviews with prospective hires including assistant state attorneys. The judge asks what impact, if any, the judge's spouse decision to accept the Executive Director's position would have on the judge's ability to preside over criminal cases.

FN 1. The inquiring judge attached the posted and advertised job description of the duties and responsibilities of the Executive Director, which does not include supervising assistant state attorneys.

Then, in the "Discussion" portion of the opinion, the JEAC went on to conclude that the trial judge may preside over the criminal cases. The JEAC explained:

4

Here, the inquiring judge has clarified that the Executive Director post the judge's spouse seeks to undertake will not involve supervision over any assistant state attorney nor will the judge's spouse be involved in the prosecution of pending cases. The fact that the judge's spouse will have some non-supervisory contact with assistant state attorneys related to administrative matters is not disqualifying. See Fla. JEAC Op. 2021-18 (Judge was not required to recuse where the judge's spouse worked as the supervising administrative assistant in the state attorney's office). As long as the judge's spouse does not decide to assist in any way in the prosecution of any case before the inquiring judge, disqualification is not required. However, if the inquiring judge's spouse offers any assistance or participates in any way in the prosecution of any case before the judge, disqualification is required. Additionally, if the circumstances of any case somehow places the judge's impartiality in question, the judge should disqualify. Canon 3E(1). (emphasis supplied).

Fla. JEAC 2023-09.

Thereafter, on March 14, 2024, Laurence moved to disqualify the trial court judge pursuant to Rule 2.330, Florida Rule of General Practice and Judicial Administration. Petitioner argued that Brewer v. Hughes, 49 Fla. L. Weekly D513a (Fla. 3d DCA March. 6, 2024), compelled disqualification of the judge. Laurence stated in his affidavit attached to the motion that he feared he would not receive an impartial hearing or trial with Judge Wilson presiding "because of the prejudice and bias he has against Defendant's [sic] prosecuted by the Office of the State Attorney where his wife works as Executive Director."

5

The judge denied the motion on March 15, 2024. Two weeks after the trial court denied Laurence's motion, Laurence filed a Notice of Filing Supplement to Motion to Disqualify, which included a copy of the "Order Denying Defendant's Motion for New Trial Before New Judge and Motion to Vacate Sentence and Request for New Evidentiary Hearing Before New Judge" with attachments that was rendered in State v. Guzzi, 16th Judicial Circuit in and for Monroe County, Florida, Case Nos. 2018-CF-37-A-M; 2021-CF-425-A-K; and 2023-MM-2197-A-K. The additional attachments to the Order in Guzzi included the job description of the Executive Director; the trial judge's September 8, 2023 request for an opinion from the JEAC; and Florida JEAC Opinion 2023-09.

In each of the other eleven petitions consolidated with Laurence's case before this Court, petitioners also alleged that on March 7, 2024, their counsel became aware that the trial judge's wife was employed by the Monroe County State Attorney's Office as Executive Director as reported by the Keys Citizen newspaper. Petitioners' counsel later found out that Judge Wilson had explained the factual circumstances in an order with attachments in Guzzi. A copy of this order was filed in the lower court in each of the cases. Like in Laurence's supplemental filing, the attachment to the Guzzi order

6

includes the letter from Judge Wilson to the JEAC, the job description for the Executive Director position, and the Florida JEAC Opinion 2023-09.

In all petitioners' cases, including Laurence's case, the trial court denied each motion to disqualify as legally insufficient. Laurence and the remaining petitioners each separately filed a writ of prohibition with this Court, all of which were timely except for <u>Barkovsky v. State</u>, 3D2024-0776.[2]

We review these petitions under a *de novo* standard of review. <u>Arbelaez v. State</u>, 898 So. 2d 25, 41 (Fla. 2005) (whether a motion to disqualify a judge is legally sufficient is a question of law that is reviewed *de novo*).

## II.    DISCUSSION

Laurence and the other petitioners allege the same facts in their motions to disqualify. They all argue that it is objectively reasonable for them to believe that they will not receive a fair trial from Judge Wilson, whose spouse holds a senior position at the Monroe County State Attorney's Office, even though the spouse will not directly oversee prosecutions.

_____

[2] The motion to disqualify was not timely filed in <u>Barkovsky</u> because it was filed on April 4, 2024, twenty-eight days after counsel discovered the facts upon which the motion to disqualify was based. Florida Rule of General Practice and Judicial Administration 2.330(g) requires that the motion "shall be filed within a reasonable time not to exceed 20 days after discovery by the party or party's counsel, whichever is earlier, of the facts constituting grounds for the motion."

"A motion to disqualify is legally sufficient if the facts alleged, assumed to be true, would cause a reasonable person to have a well-founded fear that he or she will not receive a fair trial from the assigned judge." Shuler v. Green Mountain Ventures, Inc., 791 So. 2d 1213, 1215 (Fla. 5th DCA 2001); see also Cini v. Cabezas, 343 So. 3d 1282, 1283 (Fla. 3d DCA 2022). The fear of judicial bias alleged by the movant must be objectively reasonable; a subjective fear of bias is not legally sufficient. Kowalski v. Boyles, 557 So. 2d 885, 886-87 (Fla. 5th DCA 1990). "The primary consideration is whether the facts alleged, if true, would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Arbelaez v. State, 898 So. 2d 25, 41 (Fla. 2005). "Where the claim of judicial bias is based on very general and speculative assertions about the trial judge's attitudes, no relief is warranted." Krawczuk v. State, 92 So. 3d 195, 201 (Fla. 2012). In addition, the motion to disqualify must contain facts and reasons that show "the judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So. 2d 103, 107 (Fla. 1992); Lewis v. State, 530 So. 2d 449, 450 (Fla. 1st DCA 1988)

As the State indicates, the consolidated cases before this Court are divided into two classes: eleven cases where the job description and other attachments were presented to the trial court as a supplement to the motion

8

to disqualify before the judge filed his written order; and Laurence's case, where these same materials were filed after the trial judge ruled on Laurence's motion to disqualify. In both classes of cases, we agree with the State and find that petitioners did not establish an objective fear of bias, considering the Executive Director's administrative role. See Fla. JEAC Op. 2023-09 (concluding that "[a]s long as the judge's spouse does not decide to assist in any way in the prosecution of any case before the inquiring judge, disqualification is not required"); Kowalski, 557 So. 2d at 886-87 (holding that trial court was correct in denying appellants' motion to disqualify because appellants' subjective fears were not reasonably sufficient to create a well-founded fear they would not receive a fair and impartial trial).

Addressing first the eleven cases consolidated with Laurence's case, it is clear that the motions were legally insufficient. The trial judge's spouse, in her Executive Director position, had no role in the prosecution of cases, as it was an administrative position. As outlined in the General Description, the Executive Director position was responsible for supervising employees in building operations, finance, IT, and human resources, as well as other support staff in the Monroe County State Attorney's Office. Thus, the judge's spouse does not directly oversee prosecutions. The facts and reasons the eleven petitioners stated in their motions do not tend to show personal bias

9

or prejudice. It is not legally sufficient grounds for disqualification that the trial judge's spouse is the Executive Director in the same State Attorney's Office that is prosecuting petitioners' cases before the trial judge. Accordingly, the trial judge did not err with respect to these eleven petitions.

Turning to Laurence's case, his motion to disqualify was also legally insufficient due to his "very general and speculative" allegations. Overton v. State, 129 So. 3d 1069, 1069 (Fla. 2013) ("[Defendant's] generalized and speculative allegation of bias does not constitute a basis for recusal.") (citing to McCrae v. State, 510 So. 2d 874, 880 (Fla. 1987)); Fla. R. Jud. Admin. 2.330(c)(2) (motion to disqualify must "allege specifically the facts and reasons upon which the movant relies as the grounds for disqualification . . . .").

But more importantly, Laurence and petitioners do not address the JEAC's Opinion 2023-09, which is directly on point. Appellate courts rely on such opinions. See Law Offices of Herssein & Herssein, P.A. v. United Servs. Auto. Ass'n, 271 So. 3d 889, 898 (Fla. 2018).

First, the JEAC stated in Opinion 2023-09 that questions regarding the employment of a judge's spouse must be considered on a case-by-case basis, citing to the JEAC's Opinion in 2023-05 and 2003-08. In addition, Florida JEAC Opinion 2023-09 cited to three Canons of Judicial Conduct,

which guided the committee in its conclusion that disqualification was not warranted here:

> Canon 2B states, "a judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment."
>
> Canon 3D(1) states, "a judge shall disqualify himself or herself where his or her impartiality might reasonably be questioned.["]
>
> Canon 3E(1)(d)(iii) advises a judge shall disqualify himself or herself where the judge or the "judge's spouse . . . is known by the judge to have more than a *de minimis* interest that could be substantially affected by the proceeding; or is to the judge's knowledge likely to be a witness in the proceeding."

Fla. JEAC Op. 2023-09. The JEAC noted that "[a]s long as the judge's spouse does not decide to assist in any way in the prosecution of any case before the inquiring judge, disqualification is not required." Id. The JEAC further noted "if the inquiring judge's spouse offers assistance or participates in any way in the prosecution of any case before the judge, disqualification is required." Id. JEAC Opinion 2023-09 also discusses and acknowledges:

> [O]ur past opinions have counseled against a judge serving in a judicial division where the judge's spouse works in a supervisory capacity over the lawyers appearing before the judge." *See* Fla. JEAC Op. 2018-13 (The presiding judge should not preside over cases where the judge's spouse supervises lawyers who appear before the judge in the office of the Public Defender); Fla. JEAC Op. 2011-21 (A judge may not preside over felony arraignments in a county where the judge's spouse is the supervisor of the state attorney's office for that county)[.]

Id.

In addition, the JEAC further stated in Opinion number 2023-09:

> Here, the inquiring judge has clarified that the Executive Director post the judge's spouse seeks to undertake will not involve supervision over any assistant state attorney nor will the judge's spouse be involved in the prosecution of pending cases. The fact that the judge's spouse will have some nonsupervisory contact with assistant state attorneys related to administrative matters is not disqualifying. See Fla. JEAC Op. 2021-18 (Judge was not required to recuse where the judge's spouse worked as the supervising administrative assistant in the state attorney's office). As long as the judge's spouse does not decide to assist in any way in the prosecution of any case before the inquiring judge, disqualification is not required.

Id.

Petitioners and Laurence did not allege any facts in their motions that indicated the judge's spouse would assist in any way the prosecution of the case before Judge Wilson, nor did the motions assert that the judge's spouse would supervise any of the prosecutors appearing before the judge. For these reasons, we adopt the reasoning in Florida JEAC Opinion 2023-09 that, standing alone, the fact that the judge's spouse has a high-level administrative position in the State Attorney's office that is prosecuting petitioners' cases is not legally sufficient, without more, to grant a motion to disqualify the judge. The JEAC opinions addressing this issue do not indicate that a subjective fear is sufficient to support disqualification of the judge. See Fla. JEAC Op. 2023-09; see also Fla. JEAC Op. 2018-13 (a judge should

12

not preside over cases where his spouse is a public defender who supervisors other public defenders who appear before the judge). See also Arbeleaz, 898 So. 2d at 41.

In addition, the JEAC opinions distinguish when a judge's spouse is employed by a private law firm, rather than a governmental entity, as is the case here. As the JEAC stated in Opinion number 2018-26:

> Numerous opinions of this Committee have indicated that disqualification is required when a spouse or child of the judge is a member of a law firm practicing before the judge. See, e.g., Fla. JEAC Ops. 97-08, 08-06. These holdings are based on the Committee's conclusion that when a judge's spouse or child is employed by a law firm appearing before the judge, the judge's spouse or child has more than a de minimus economic interest that could be substantially affected by the proceeding. Fla. JEAC Ops. 08-06; 07-16; 06-26; 98-20.
>
> A different conclusion has been consistently reached by this Committee when faced with inquiries related to relatives employed by a state attorney, a public defender, or a legal aid office. In those instances, the organization by which the relative is employed has been distinguished from a typical law firm. The predecessor of this Committee, in Fla. JEAC Op. 97-25 noted the reasoning of the Indiana Commission on Jud. Qualifications Advisory in its Op. 1-89, wherein it was found that a spouse or relative in a governmental position does not have a substantial interest in the outcome of the proceeding as might be the case if the spouse were employed in a private law firm where law partners or associates who share good will, profits, and losses are engaged in one another's cases regardless of the identity of the attorney of record.

The JEAC concluded in Opinion number 2018-26 that disclosure is not necessary unless the spouse was directly or indirectly involved in the case

13

pending before the judge. Those are not the facts in Laurence and petitioners' cases.

There is very little case law discussing the circumstances requiring disqualification when a trial judge's spouse or immediate family member is employed by the state attorney's office or public defender office in the same judicial circuit where the trial judge is presiding over criminal cases. Petitioners cite Edwards v. State, 976 So. 2d 1177 (Fla. 4th DCA 2008), and Brewer v. Hughes, 49 Fla. L. Weekly, D513 (Fla. 3d DCA Mar. 6, 2024), in support of their positions; however, we find these two cases to be distinguishable.

In Edwards, the two assistant state attorneys assigned to try Edwards's case were supervised by the trial judge's daughter. Edwards, 976 So. 2d at 1178. Edwards filed a motion to disqualify the trial judge the same day he learned of the judge's relationship to the supervising prosecutor. Id. The judge denied the motion and noted that his daughter was on vacation and therefore could not oversee the prosecutor or try the case herself. Id. Edwards appealed, and the Fourth District Court of Appeal reversed for a new trial and stated, "The judge improperly interjected himself into the motion by attempting to determine the truthfulness of the allegations in the motion and relying on facts not in the motion." Id. at 1179. Thus, not only did the

14

Court in <u>Edwards</u> not directly address the merits of the case, the facts in <u>Edwards</u> are distinguishable because the trial judge's daughter was the supervisor of the assistant state attorney prosecuting the case. <u>Id.</u> at 1178.

In <u>Brewer</u>, the trial judge sought an opinion from the JEAC, as the trial judge in the case before us. <u>Brewer</u>, 49 Fla. L. Weekly D513a. This Court's decision does not include the facts regarding the  allegations for disqualification. <u>Id.</u> This Court stated in <u>Brewer</u> that the JEAC opinion issued in response to the judge's request "contained underlying material facts (provided by the inquiring judge) that contradicted certain allegations contained in the motions to disqualify." <u>Id.</u> The Court stated that  "judges may not comment on the merits or otherwise look outside the allegations of bias or prejudice when reviewing an initial motion to disqualify." <u>Id.</u>; <u>see</u> Fla. R Gen. Prac. & Jud. Admin. 2.330(h). Thus, we held that by referencing the JEAC opinion in a footnote in the denial orders, "the trial judge implicitly relied on these additional facts in denying the motions to disqualify." <u>Id.</u>

It is clear from petitioners' motions and their writs of prohibition that they believed the <u>Brewer</u> opinion controlled here and was a decision on the legal sufficiency  of  the motion. However,  our decision  in  <u>Brewer</u> did  not address the merits of the claim that there were legally sufficient grounds for

15

disqualifying the trial judge in that case. Thus, <u>Brewer</u> is distinguishable from the case before this Court and does not apply here.

Accordingly, we adopt the sound reasoning of JEAC opinion 2023-09, and find that when a trial judge's spouse or immediate family member is employed by a government entity such as the State Attorney's Office in the same judicial circuit where the trial judge is presiding over criminal cases and the spouse or immediate family member does not have supervisory authority over prosecutors appearing before the judge, recusal of the trial judge is not required. Because there was no objective information in petitioners' motions to disqualify that was legally sufficient to support the standard for disqualification, we deny the petitions for writs of prohibition in Laurence's case and in the other eleven petitioners' cases, as well.

Petitions for writ of prohibition denied.